# EXHIBIT 1

# DEVELOPMENT AGREEMENT

**AMD**

**THIS DEVELOPMENT AGREEMENT** ("Agreement") is dated as of **March 26, 2015** (the "**Effective Date**"), by and between **ADVANCED MICRO DEVICES, INC.**, on its own behalf and on behalf of its affiliates, having its principal place of business at One AMD Place, Sunnyvale, California 94088 ("**AMD**"), and **Zypre, Inc.**, having its principal place of business at 8899 Beverly Blvd., Suite 400, Los Angeles, CA 90048 ("**Developer**").

**WHEREAS,** AMD designs and markets certain GPUs and related software (the "AMD Products"); and

**WHEREAS,** Developer is the developer of certain virtual reality experiences curated by leading experts at Smithsonian's National Air and Space Museum(the "VR Experience"); and

**WHEREAS,** AMD is willing to contract with Developer to perform certain services and the parties wish to jointly promote the combination of AMD Products with the VR Experience in accordance with one or more Statements of Work ("SOW") that are attached to and made a part of this Agreement;

**NOW, THEREFORE,** in consideration of the mutual covenants and conditions contained herein, the parties agree as follows:

1 **DEFINITIONS**

The following definitions apply to this Agreement:

(a) "**Intellectual Property Right**" means all copyrights, trademarks, trade secrets, patents, mask works, and all related, similar, or other intellectual property rights recognized in any jurisdiction worldwide, including all applications, registrations and renewals with respect thereto.

(b) "**Software**" shall mean the Deliverables in the form of software developed under the SOW by Developer as defined in the SOW.

2 **OBLIGATIONS AND STANDARD OF PERFORMANCE**

(a) The Parties shall make commercially reasonable efforts to fulfill their respective obligations under this Agreement, including, without limitation, the engineering, marketing, promotional and other activities described in the SOW. The parties acknowledge and agree that any deadlines and/or time schedules provided for in the SOW or otherwise agreed to in writing by the parties are of the essence in order to maximize the cross-promotion of the AMD products and the VR Experience; provided however, that each Due Date for Deliverables under Section 4.A.(b) and (c) of the SOW may be extended by up to two (2) business days at Developer's election if such extension is reasonably necessary to complete the applicable Deliverable.

(b) Developer will perform all work ("Services") described in the SOW using at least the same level of care, skill and diligence customarily observed in the industry at the time the Services are performed.

3 **COMPENSATION**

Subject to the terms and conditions of this Agreement, the fees payable under this Agreement will be as stated in the SOW. Payment of undisputed amounts will be due and payable within sixty (60) days following the later of AMD's (i) receipt of Developer's itemized invoice or (ii) acceptance of the applicable Services.

4 **INTELLECTUAL PROPERTY RIGHTS**

(a) License: Developer grants to AMD a royalty-free, worldwide, nonexclusive license during the Term to: i) use and copy the Software for AMD's internal purposes only, including evaluation and testing; and ii) perform, display, and demonstrate, in any venue, public or private, the Software and copies thereof.

(b) Distribution License: With respect to any copies or key codes of the Software that AMD has received or purchased, or will receive or purchase, from Developer, Developer hereby grants to AMD a nonexclusive, worldwide license to distribute the Software or its key codes together with AMD Products, directly or through its intermediaries, to end-users. AMD's distribution to end-users, whether directly or through an intermediary, shall be made pursuant to the end-user license included by Developer in the Software or, at AMD's option, pursuant to AMD's standard end-user license. AMD shall have the right to sublicense all of its distribution rights granted in this Agreement to any of its intermediaries.

(c) Intellectual Property Rights: Subject to the licenses granted to AMD pursuant to Sections 4(a) and (b) above, and any applicable rights of third parties, Developer shall be the sole and exclusive owner of all Deliverables and the results and proceeds of all Services created or performed pursuant to this Agreement (and any related SOW), and all Intellectual Property Rights therein and thereto. Except for the rights and licenses expressly granted

under this Agreement (and any related SOW), neither Party conveys to the other Party (by implication, estoppel or otherwise) any right or license under any Intellectual Property Rights.

(d) <u>Trademarks:</u> Each party ("Licensor") hereby grants the other party ("Licensee") a non-exclusive, revocable (upon termination hereof), non-transferable, non-assignable, limited license to use the Licensor's name, product names and trademarks (collectively the "Licensor Marks") solely for the purpose of accurately identifying the Licensor's products which are co-marketed pursuant to the terms and conditions of this Agreement. All goodwill generated as a result of the Licensee's use of the Licensor Marks is solely for the benefit of the Licensor. Licensee shall use the Licensor Marks in accordance with Licensor's communications guidelines in effect from time to time. Licensee shall obtain Licensor's prior written approval for any marketing materials developed by or on behalf of Licensee which employ the Licensor Marks and change or otherwise correct, at its own expense, any materials that Licensor determines, acting reasonably, are inaccurate, objectionable, misleading or a misuse of the Licensor Marks. Except as expressly granted in writing by an authorized representative of AMD, Developer shall not acquire any right, title, or interest in or to, nor have any right to use, any AMD trademark, trade name, service mark, or other proprietary designation of AMD other than as necessary to perform the Services.

5 **WARRANTY & LIMITATION OF LIABILITY**

(a) Each party represents and warrants that it has full power and authority to grant the rights under this Agreement and the right to enter into this Agreement.

(b) IN NO EVENT SHALL EITHER PARTY, OR ANY OF ITS AFFILIATES, BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, EXEMPLARY, INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER ARISING OUT OF CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE, RESULTING FROM OR RELATED TO THIS AGREEMENT (WHETHER OR NOT SUCH PARTY KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF ANY SUCH DAMAGES). EXCEPT FOR BREACH OF THE CONFIDENTIALITY OBLIGATIONS OF SECTION 7, NEITHER PARTY'S TOTAL LIABILITY UNDER THIS AGREEMENT SHALL BE GREATER THAN ONE HUNDRED THOUSAND US DOLLARS (US$100,000). NOTWITHSTANDING THE FOREGOING, NEITHER PARTY'S TOTAL INDEMNIFICATION OBLIGATION UNDER SECTION 6 SHALL BE GREATER THAN FIVE HUNDRED THOUSAND US DOLLARS (US$500,000).

6 **INDEMNIFICATION**

(a) DEVELOPER WILL INDEMNIFY, DEFEND, AND HOLD AMD AND ITS AGENTS, OFFICERS, DIRECTORS, AND EMPLOYEES HARMLESS FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND REASONABLE EXPENSES, TO THE EXTENT ARISING OUT OF OR RESULTING IN WHOLE OR IN PART FROM ANY MATERIAL BREACH OF THIS AGREEMENT BY DEVELOPER, ANY CLAIM THAT SERVICES, SOFTWARE OR WORK PRODUCT PROVIDED HEREUNDER INFRINGE A THIRD PARTY INTELLECTUAL PROPERTY RIGHT, OR ANY NEGLIGENT ACT OR OMISSION OF ANY DEVELOPER EMPLOYEE, AGENT, OR SUBCONTRACTOR.

(b) AMD WILL INDEMNIFY, DEFEND, AND HOLD DEVELOPER AND ITS AGENTS, OFFICERS, DIRECTORS, AND EMPLOYEES HARMLESS FROM AND AGAINST ALL CLAIMS, DAMAGES, LOSSES AND REASONABLE EXPENSES, TO THE EXTENT ARISING OUT OF OR RESULTING IN WHOLE OR IN PART FROM ANY MATERIAL BREACH OF THIS AGREEMENT BY AMD.

7 **CONFIDENTIALITY**

(a) <u>Confidentiality</u>. Information exchanged under this Agreement and performance under this Agreement shall be governed by the Nondisclosure Agreement between the parties, agreement number 109941, effective April 2, 2015. Regardless of the definition or scope of confidential information under the Nondisclosure Agreement, the terms and conditions of this Agreement shall be considered Confidential Information; provided, however, that Developer may disclose relevant terms and conditions of this Agreement to any subcontractor engaged by Developer in connection with this Agreement that is subject to a duty of confidentiality.

(b) <u>Publicity</u>. The parties agree that any press releases and public announcements concerning their cooperation in the development of the Software shall be jointly planned and coordinated by the parties.

AMD CONFIDENTIAL

8 **TERM AND TERMINATION**

(a) Term. This Agreement shall commence on the Effective Date and shall continue until March 15, 2018 (the "Term").

(b) Termination of Agreement.

 (i) Either party may terminate this Agreement effective immediately and without liability upon written notice to the other party if the other party:

  (1) voluntarily petitions in bankruptcy or otherwise seeks protection under any law for the protection of debtors;

  (2) has a proceeding instituted against it under any provision of the U.S. Federal Bankruptcy Code or equivalent legislation of a non-U.S. jurisdiction which is not dismissed within ninety (90) days, or is adjudged a bankrupt, ceases or suspends business, or makes an assignment of the majority of its assets for the benefit of its creditors;

  (3) materially breaches any obligation under this Agreement, which breach is not remedied within thirty (30) days after written notice specifying the breach.

(c) Effect of Termination. Sections 1, 4(b)-(d), 5, 6, 7, 8(a), and 9 of this Agreement shall survive and termination or expiration of this Agreement.

9 **GENERAL PROVISIONS**

(a) Compliance. Each party shall comply with all applicable governmental regulations of the United States or any foreign country including, but not limited to, import and export restrictions and the United States Foreign Corrupt Practices Act.

(b) Assignment. Neither party may assign this Agreement or any of its rights or obligations hereunder to any third party without the other party's written consent. Any such assignment shall be null and void.

(c) Governing Law. This Agreement shall be governed by and interpreted in accordance with the laws of the state of Texas, excluding its choice of law rules. The parties exclude the application of the United Nations Convention on Contracts for the International Sale of Goods, even if otherwise applicable.

(d) Headings. The paragraph headings appearing in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or extent of such paragraph, or in any way affect such agreements.

(e) Counterparts. This Agreement may be executed simultaneously in two counterparts, each of which will be considered an original, but all of which together will constitute one and the same instrument.

(f) Notices. Any notice required under this Agreement shall be given in writing and shall be deemed effective upon delivery to the party to whom addressed by (a) express courier, upon written verification of actual receipt, (b) facsimile, upon confirmation of receipt generated by the sending device, or (c) five days after sending, via certified mail, return receipt requested. All notices shall be sent to the applicable address on the cover page hereof or to such other address as the parties may designate in writing.

(g) Amendments. Any amendments to this Agreement must be in writing and executed by the authorized representatives of both parties.

(h) Severability. The illegality or unenforceability of the whole or any part of the provisions of this Agreement will not affect the continued operation of the remaining provisions of this Agreement.

(i) Waiver. The failure of either party at any time to insist upon strict performance of any of the terms and conditions contained in this Agreement will not be deemed a waiver of its right at any time thereafter to insist upon strict performance.

(j) Relationship of the Parties. Nothing contained herein or done pursuant to this Agreement shall constitute the parties as entering upon a joint venture or partnership or shall constitute either party hereto the agent of the other party for any purpose or in any sense whatsoever.

(k) Force Majeure. Neither party will be responsible for delays or failure in performance resulting from acts beyond the control of such party, including, without limitation, acts of God, riots, acts of war, epidemics, fires, earthquakes or other natural disasters.

(l) Entire Agreement. This Agreement and the exhibits hereto are the complete agreement of the parties relating to the subject matter hereof. This Agreement supersedes and governs any other prior or collateral agreements or understandings, whether written or oral with respect to the subject matter hereof.

AMD CONFIDENTIAL

IN WITNESS WHEREOF, the authorized representatives of the parties have executed this Development Agreement as of the Effective Date.

| ADVANCED MICRO DEVICES, INC. | ZYPRE, INC. |
|---|---|
| By: _____ | By: _____ |
| Name: Matt Skynner | Name: FRANK FORNARI |
| Title: Corp VP & GM | Title: CEO |
| Date: Apr 10, 2015. | Date: 4·9·15 |

APPROVED BY AMD LEGAL:
SBM 4/10/25

AMD CONFIDENTIAL